Nott, J.,
delivered tlie opinion of the court:
Notwithstanding the magnitude of this case, and the ingenious ability with which it lias been presented, the court is of the opinión that it turns upon a single point, and that no substantial distinction lies between it and the cases of the Chicago, Milwaukee & Saint Paul Railroad (14 C. Cls. B., 125, 144), and the Chicago & Northwestern Railroad (15 id., 233, 245).
The learned counsel for the claimant contended upon the hearing that mail transportation services rendered by this company are to be measured by the rule laid down in the act of Congress which incorporated it; and that this railroad is a stranger to a subsequent statute which prescribes the terms upon which the Postmaster-G-eneral may contract with other railroads neither incorporated by Congress nor having rates •expressly prescribed or provided for by law. He maintained that the Pacific Railroad Act (12 Stat. L., p. 489, § 6, ch. 120), wherein it is declared that certain grants are made upon condition that the company shall, among other things, “ transport mails” “for the government” at fair and reasonable rates of compensation, not to exceed the amounts paid by private parties for the same Icind of service,” defines a compensation mutually agreed upon and fixed by contract in the act itself; and that the intent and meaning of the language, by a just construction, is that the compensation to be paid by the government shall be -equal to the amount paid by private parties for the same kind of service. From these premises it is argued that the statute which made this specific agreement with this company for these services is not repealed or affected by the subsequent •general legislation concerning rates (Rev. Stat., Title 46, ch. 10) which authorizes the Postmaster-General to make other contracts with other companies not thus specifically legislated for by Congress.
We do not understand the act 1862 either to make a contract for all prospective services, or to bind the. government to pay precisely the same rates which are paid by private parties for ■the same kind of service. Its language is:
u Sect. 6. And be it further enacted, That the grants aforesaid are made upon condition that said company shall pay said bonds at maturity, and shall keep said railroad and telegraph line in repair and use, and shall at all times transmit dispatches *591 over said telegraph line, and transport mails, troops, and munitions of war, supplies, and public stores upon said railroad, for the government, whenever required to do so by any department thereof, and that the government shall at all times have the preference in the use of the same for all the purposes aforesaid (at fair and reasonable rates of compensation, not to exceed the amounts paid, by private parties for the same hind of service); and all compensation for services rendered for the government shall be applied to the payment of said bonds and interest until the whole amount is fully paid.”
Obviously and .really the section means, we think, that the company shall transport the government’s mails, munitions, troops, &c., whenever required so to do, and that the government at all times shall have the preference over private parties; but that the transportation in all cases shall be done at fair and reasonable rates, which in no case (of preference or otherwise) shall exceed the rates paid by any private party for the same kind of service, while in all cases, even where the ordinary rates are fair and reasonable per se, the government shall have the benefit of those exceptional reductions of rate which railroads frequently make, sometimes as a matter of policy and sometimes as a matter of favor.
The case comes before us upon an agreed statement of facts, which in effect propounds certain questions for our determination, chief of which is, whether the rates charged for express cars on the Pacific railroads do not form the criterion of compensation for postal cars. It is contended that inasmuch as-, express cars come nearest in species of railway transportation to postal cars, they afford substantially the same kind of service,” and the rates paid therefor by private parties form the standard for the use and service of postal cars.
Construing the statute as we do, we think the court would not be limited, in an action where it was compelled to estimate damages, to the rates charged by the company to private parties for a single kind of similar service. We think that a court or jury would be authorized to look over the entire field of service in determining what was a fair and reasonable charge for a kind which was similar to, but not identical with, any other. For instance, if it should appear that the receipts of passenger cars were less than the receipts of postal cars, and the cost and running expenses no greater, we are inclined to think that that fact might be a proper element in the problem of estimat *592 ing the amount of “fair and reasonable rates of compensation.” The reports of the Auditor of Eailroad Accounts show wliat rates of compensation the claimant has received for passenger cars, but in the determination of the case we do not feel at liberty to go outside of the agreed statement of facts upon which it was submitted.
At the time when the act 1862 was passed, the device known as the postal car system did not exist. But whether it existed or not, the provision before quoted in the act 1862 did not bind the government to send its mails over the claimant’s road, and left Congress free to determine whether they should be so sent, and if so sent to prescribe conditions for their agent, the Postmaster-General. The subsequent provisions of law embodied in the Eevised Statutes (ch. on railway service, §§ 3997, &c.) prescribe those conditions. We are not called upon to define the rights of the claimant or the liabilities of the government in the hypothetical case which may be suggested, of this road having refused to carry the mails according to the terms and conditions of those statutes, or of the Postmaster-General having sent only letter matter in ordinary cars. over the road. But it is clear to our minds that if the Postmaster-General continued the use of postal- cars upon the claimant’s road, and if the claimant continued to run them for the convenience of the Post-Office, that service must be deemed voluntary, and upon the conditions prescribed by law.
In coming to this conclusion we have not overlooked the fact that on the 1st September, 1876, the president of the company gave to the Postmaster-General clear and explicit notice that the claimant intended to charge the government express car rates for the running of postal cars. Such a notice was eminently proper to put the Postmaster-General on his guard as to the future use of postal cars, and to negative the presumption that the claimant would thereafter continue to acquiesce in the existing rates. It was a good notice to save a cause of action, but was insufficient to create one. We have shown, or endeavored to show, in the case of the Chicago & Northwestern Eailroad (15 C. Cls. R., 245), that such a protest addressed by a railroad company to the Postmaster-General neither warranted him in transcending his authority as a public agent, nor operated to take the service thereafter performed out of the restrictive consent of the Eevised Statutes.
*593 The judgment of tbe court is that whereas the sum of $618,910.54 is found to be due to the claimant from the defendants for the services alleged in its petition, of which it is entitled to recover a moiety, to wit, the sum of $309,455.27, pursuant to the Act 2d July, 1864 (13 Stat. L., p. 356, § 5, ch. 216), and whereas the sum of $682,032.18 is found to be due from the claimant to the defendants on the matters alleged in their plea of counter-claim, therefore the said moiety of $309,455.27 be set off against and deducted from the said sum found to be due to the defendants, and the defendants recover from the claimant the balance remaining, to wit, the sum $372,576.91.